UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMU JAMES, | No. 2:23-cv-0188-CKD P |
| Plaintiff, | |
| v. | <u>ORDER</u> AND |
| D. GONZALEZ, et al., | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendants. | |

Plaintiff Tamu James is a state prisoner proceeding pro se with a civil rights action filed under 42 U.S.C. § 1983. Defendants' motion for summary judgment is before the court. (ECF No. 29.) The motion should be granted because plaintiff fails to raise a genuine issue of material fact for trial on any of his Eighth Amendment claims.

**PROCEDURAL BACKGROUND**

Plaintiff filed the complaint on January 31, 2023. (ECF No. 1.) After the court performed the screening required by 28 U.S.C. § 1915A(a), this case proceeded on plaintiff's Eighth Amendment excessive force claims against defendants Gonzales and Reilly and Eighth Amendment failure to protect claims against defendants Pitts, Valine, Jensen, and Villasenor. (ECF No. 6.)

On November 27, 2024, defendants filed the motion for summary judgment presently before the court. (ECF No. 29.) Plaintiff opposed the motion. (ECF Nos. 37.) Defendants filed a

reply. (ECF No. 40.)

## LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the moving party shows there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In order to obtain summary judgment, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Summary judgment should be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in

contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson, 447 U.S. at 248.

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "'the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968)). Thus, the "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita, 475 U.S. at 587 (citation and internal quotation marks omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact, [the court] draw[s] all inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011) (citation omitted). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 810 F.2d 898, 902 (9th Cir. 1987). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586 (citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587 (quoting First Nat'l Bank, 391 U.S. at 289).

**EVIDENCE**

**I.   Undisputed Facts[1] from Defendants' Separate Statement ("SSUF")[2]**

At all relevant times, plaintiff was an inmate at California State Prison, Sacramento ("CSP-SAC") and defendants were employed there. (SSUF 1, 2.) In January 2022, defendant

---

[1] Except where specifically indicated otherwise, these facts are undisputed.

[2] See ECF No. 29-1.

Gonzales was a correctional sergeant and defendants Reilly, Jensen, Valine, Pitts, and Villasenor were correctional officers. (SSUF 2.)

In early 2022, possession of cell phones by inmates was a significant problem at CSP-Sac on Facility C. (SSUF 12.) Cell phones are contraband, and inmates are strictly prohibited from using cell phones due to multiple safety risks presented. (SSUF 12, 13.) On the morning of January 22, 2022, an Investigative Services Lieutenant told defendant Gonzales that plaintiff was possibly in possession of two cellular phones. (SSUF 23.)

Two inmates were assigned to plaintiff's cell. (SSUF 24.) Defendant Gonzales decided to take four officers with him to search the cell. (SSUF 24.) Defendant Gonzales relayed the information received to defendants Reilly, Jensen, Pitts, and Valine, and those five defendants proceeded to Building 5. (SSUF 24.)

Defendant Villasenor was the control booth officer and opened the door to allow the other defendants to enter Building 5. (SSUF 25.) The control booth officer controls the doors in and out of the building and cell doors. (SSUF 25.) As control booth officer, defendant Villasenor could not leave his post for any reason unless relieved by another officer. (SSUF 25.) Defendant Villasenor opened plaintiff's cell door as the other defendants approached it. (SSUF 26.)

When the cell door opened, plaintiff was sitting on the toilet in the front of his cell. (SSUF 27.) Plaintiff's cellmate was sitting on the lower bunk behind an inmate-manufactured curtain which blocked defendants' view into the cell. (SSUF 30.) Curtains are not permitted due to safety risks they pose. (SSUF 31.) Plaintiff and his cellmate were instructed to exit the cell but neither inmate complied. (SSUF 28.) Plaintiff told defendants, "I'm on the toilet, give me a minute." (SSUF 28.) Plaintiff admits he was intentionally stalling, hoping to be able to "wipe" his cell phone before turning it over. (SSUF 32.)

At the time of the incident, inmates in Facility C would sometimes simply hand over their cell phones when staff came to conduct a search for that purpose and plaintiff has done so on a prior occasion. (SSUF 15, 22.) Possessing a cell phone can result in discipline but does not result in an inmate being placed in administrative segregation. (SSUF 15.) Based on the behavior of plaintiff and his cellmate, defendants believed they might be stalling because of contraband in the

cell more serious than cell phones, such as drugs or weapons. (SSUF 33.)

Plaintiff was permitted at least 30 minutes to continue sitting on the toilet. (SSUF 29.) After plaintiff refused to comply with orders for at least 30 minutes, defendant Gonzales told plaintiff "I'm going to give you a direct order to get off the toilet, or I'm going to spray you." (SSUF 34.) Plaintiff did not get off the toilet. (SSUF.) Plaintiff was aware that he was required to comply with staff orders and that staff were authorized to use force to gain his compliance if he failed to comply with staff orders. (SSUF 19.)

Defendant Gonzales made a statement about believing he observed a thin black object in plaintiff's hand and unholstered his pepper spray. (SSUF 35, 36.) Defendant Gonzales gave plaintiff an order about what to do with his hands and plaintiff moved his hands. (SSUF 36.) Defendant Gonzales deployed a two-second burst of OC pepper spray. (SSUF 37, 38.) Defendant Reilly also deployed OC pepper spray.[3] (SSUF 38.)

After the OC pepper spray was deployed, plaintiff's cellmate got down on the ground in the prone position. (SSUF 40.) Plaintiff got up from the toilet and moved to the back of the cell. (SSUF 40.) Plaintiff was given further orders to "come out [of] the cell." (SSUF 41.) Plaintiff said to his cellmate, "Bro, you can go out. You can go and leave. I'm not coming out the cell. F them." (SSUF 43.) Plaintiff's cellmate exited the cell, was placed in handcuffs, and was escorted away by defendant Pitts, who did not return to the scene. (SSUF 42.)

Plaintiff was given at least three more orders to exit the cell. (SSUF 43.) After plaintiff failed to comply with the further orders to exit the cell, defendant Gonzales ordered the cell door to be closed so that a controlled use of force could be prepared. (SSUF 43.) Under plaintiff's evidence, while the cell door was closing, defendant Reilly again sprayed plaintiff with OC pepper spray and called plaintiff "EOP motherfucker." (SSUF 45; ECF No. 29-3 at 40.)

Defendant Gonzales ordered defendant Villasenor to shut off the water to plaintiff's cell to prevent plaintiff from flushing any contraband down the toilet. (SSUF 46.) Once the cell door

---

[3] Defendant Reilly's declaration denies that he deployed OC pepper spray during this incident. (See ECF No. 29-5, ¶ 18.) For purposes of this motion, however, defendants do not dispute plaintiff's evidence to the contrary. (SSUF 38.)

5

closed, the effects of the spray "stopped burning and [plaintiff] stopped coughing" so that he was physically "a whole lot better." (SSUF 47; ECF No. 29-3 at 47.) Defendants Gonzales, Reilly, and Valine left the housing unit while defendant Jensen stayed to maintain supervision of plaintiff. (SSUF 48.) Defendants Jensen, Valine, Pitts, and Villasenor did not use any force on plaintiff. (SSUF 54.)

Defendant Jensen attempted to talk plaintiff into exiting the cell without success. (SSUF 49.) After at least approximately two hours, another officer persuaded plaintiff to submit to handcuffs and exit the cell. (SSUF 49.) Plaintiff was escorted out of the housing unit. (SSUF 49.) Defendant Jensen searched the cell and found two broken smart phones. (SSUF 50.) Defendant Jensen also found an item with a flat metal stock and a sharp jagged point measuring approximately three inches in length by one-half inch in width and with a handle constructed out of cloth. (SSUF 50.)

Under CDCR's use-of-force policy, officers should use whichever force option is reasonably believed sufficient to subdue an attacker, overcome resistance, or effect custody. (SSUF 4.) A controlled use of force is used when there is not an imminent threat. (SSUF 9.) Removing an uncooperative inmate from a cell is a common situation requiring a controlled use of force. (SSUF 10.) To remove an uncooperative inmate from a cell, staff will deploy up to three applications of chemical spray such as OC pepper spray. (SSUF 10.) OC pepper spray is a "less lethal" force option which usually only causes temporary discomfort. (SSUF 7.) If an inmate still refuses to exit the cell after three applications of chemical spray, depending on the circumstances, correctional staff may escalate to using physical force. (SSUF 11.) In defendants' experience, inmates in distress from the effects of pepper spray will often comply with orders so they can promptly receive medical attention or a decontamination shower. (SSUF 57.)

### II. Plaintiff's Evidence

Plaintiff did not comply with the procedural requirements of Local Rule 260(b), but the court affords leniency to pro se litigants, particularly in civil rights cases. See, e.g., Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010)). The court considers the evidence produced with plaintiff's opposition in the form of

6

declarations signed under penalty of perjury to the extent they are based on personal knowledge of specific facts that are admissible. (ECF No. 37 at 63-69, 80-84.) The court also considers the verified allegations in plaintiff's complaint. See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000).[4]

### A. Plaintiff's Sworn Statements

On January 20, 2022, plaintiff was sitting on the toilet in his cell when the cell door opened and defendants Gonzales, Reilly, Pitts, Jensen, and Valine appeared. (ECF No. 1 at 5.) Defendant Gonzales announced they were there to search for two phones and the defendants began yelling for plaintiff to get off the toilet. (Id.; ECF No. 37 at 64.) Plaintiff responded, "I'm taking a shit. Close the door." (ECF No. 37 at 64.) Defendant Reilly indicated plaintiff should hurry up. (Id.) Defendant Gonzales stated, "Let's go man" and "we're just here for the phones, you're going to escalate this shit to something else." (Id.) Plaintiff stated to defendant Reilly "close the door and let me finish and I'll give you the phones." (Id.) Plaintiff informed defendant Gonzales that he was on a medication that causes sudden frequent diarrhea. (Id.)

The defendants huddled up and then came back yelling in an aggressive manner while unholstering their pepper spray canisters. (ECF No. 1 at 6.) Defendant Gonzales began making false claims about plaintiff having something on his side at which point plaintiff raised both hands to assure defendants he had nothing but toilet paper in his hands. (Id.; ECF No. 37 at 64.) Plaintiff refused to exit the cell but did not throw a shower shoe or anything else at defendant Gonzales. (Id.)[5]

When plaintiff didn't move from the toilet, defendant Gonzales sprayed him in the face

---

[4] Statements that are legal conclusions, speculative assertions, and statements of hearsay evidence do not satisfy the standards of personal knowledge, admissibility, and competence required by Federal Rule of Civil Procedure 56(c)(4). Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citations omitted). Neither a mere claim that a matter is disputed nor an argument unsupported by competent evidence will suffice to create a dispute of material fact. See Flaherty v. Warehousemen, Garage & Service Station Employees' Local Union No. 334, 574 F.2d 484, 486 n. 2 (9th Cir. 1978) (assertions made in legal memoranda are not evidence).

[5] Under some of defendants' evidence, plaintiff threw a black object out of the cell which struck defendant Gonzales in the left ankle and boot. (ECF No. 29-4, ¶ 12.) Plaintiff disputes this evidence, and the court resolves the dispute in plaintiff's favor for purpose of this motion.

and defendant Reilly followed suit. (ECF No. 37 at 65.) This happened about 30 to 40 minutes after the defendants arrived. (Id.) After being sprayed, plaintiff got off the toilet and went to the back of the cell. (ECF No. 1 at 6; ECF No. 37 at 68.) Defendant Gonzales stated "[t]hat's enough spray" and/or "we can't justify more spray." (ECF No. 1 at 6; ECF No. 37 at 65.)

Plaintiff attempted to decontaminate with water from the sink and with his fan. (ECF No. 1 at 7; ECF No. 37 at 65.) Defendant Gonzales ordered defendant Villasenor to cut the water off and turn off the circuit breaker. (Id.) Plaintiff's cellmate exited the cell and was escorted away. (Id.) Plaintiff remained in the cell because he was frightened. (Id.)

As the cell door was closing, defendant Reilly stated "you E.O.P. motherfucker" and sprayed more pepper spray inside of the cell. (ECF No. 1 at 7; ECF No. 37 at 66.) The other defendants did nothing to stop defendants Reilly and Gonzales and "encouraged it by taunting and saying expletives." (ECF No. 1 at 7.)

After all the defendants left, plaintiff agreed to leave the cell and was escorted to the sally port. (ECF No. 1 at 8.) Defendant Jensen informed plaintiff that he was being charged with a rule violation report for battery on a peace officer and having a deadly weapon. (ECF No. 1 at 8.) These charges resulted in plaintiff being placed in administrative segregation. (Id.) The item alleged to be a weapon was a piece of metal sharpened to a point. (Id.)

**B.  Other Declarations**

Inmate Griffin was housed next door to plaintiff on the date of the incident. (ECF No. 37 at 80.) Inmate Griffin heard the defendants order plaintiff to exit the cell and heard plaintiff requesting to finish using the toilet but could not clearly hear what was being said at all times. (Id.) After approximately 30 minutes, defendant Gonzales and defendant Reilly approached the cell and defendant Gonzales told plaintiff to put his hands up in the air and claimed something was in plaintiff's hands. (Id.) Defendants Gonzales and Reilly unholstered their pepper spray and sprayed plaintiff. (Id.) While the cell door closing, defendant Reilly hurried to spray plaintiff again before the door closed. (Id. at 81.)

Inmate Keith Candler was plaintiff's cell mate at the time of the incident. (ECF No. 37 at 83.) When the defendants appeared at the cell door yelling for them to come out of the cell,

8

1  plaintiff told the officers he would come out when he finishes. (Id.) After about 30 minutes the
2  officers huddled up and then began asking plaintiff to put his arms up and then to put them down.
3  (Id.) Defendant Gonzales sprayed plaintiff while his hands were up as he was on the toilet. (Id.)
4  Inmate Candler did not see plaintiff make threats or throw anything at defendant Gonzales. (Id.)
5  Plaintiff asked multiple times "can I give you the phones[?]" (Id. at 84.)

## DISCUSSION

Defendants argue (1) the undisputed evidence demonstrates defendants Gonzales and Reilly did not use excessive force on plaintiff; (2) the undisputed evidence demonstrates defendants Valine, Pitts, Jensen, and Villasenor did not fail to protect plaintiff; and (3) defendants are entitled to qualified immunity. (ECF No. 29 at 1. Viewing the evidence in a light favorable to plaintiff, there is no genuine issue of material fact for trial on the excessive force or failure to protect claims. In light of this determination, and in the interests of judicial economy, the court need not address defendants' remaining argument based on qualified immunity.

### I. Excessive Force

#### A. Legal Standard

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is… whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillan, 503 U.S. 1, 7 (1992). The malicious and sadistic use of force to cause harm always violates contemporary standards of decency in violation of the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 327 (1986). To prove a claim that prison officials used unconstitutionally excessive force, a plaintiff must show the prison official's actions, taken in context, were "objectively harmful enough" to offend "contemporary standards of decency" and that the official acted with "a sufficiently culpable state of mind[.]" Hudson, 503 U.S. at 8,

The use of pepper spray can implicate a prisoner's Eighth Amendment right to be free from the use of excessive use of force. See Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002); DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001). The court's inquiry into an excessive force claim focuses on the extent of the prisoner's injury, the need for application of

force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. Hudson, 503 U.S. at 7. "Because the excessive force inquiry nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, [the Ninth Circuit has] held on many occasions that summary judgment or judgment as a matter of law in excessive force causes should be granted sparingly." Avina v. United States, 681 F.3d 1127, 1130 (9th Cir. 2012) (citation omitted).

        **B.**      **Analysis**

              **1.**      **Extent of the Injury**

Plaintiff's complaint alleges he suffered pain and burning sensations, shortness of breath, runny nose, and "pepper spray flare ups" for approximately seven days. (ECF No. 1 at 5.) He also testified once the cell door closed, the effects of the spray "stopped burning" and he "stopped coughing" such that he was physically "a whole lot better." (SSUF 47; ECF No. 29-3 at 47.) The Ninth Circuit has classified injuries resulting from pepper spray as "moderate" where the inmate was left with blisters and burns. See, e.g., Furnace v. Sullivan, 705 F.3d 1021, 1029 (9th Cir. 2013). Here, the record does not reflect plaintiff suffered a physical injury beyond the transitory effects of the pepper spray. The nature and extent of the injury does not weigh in favor of finding excessive force in this case.

              **2.**      **Need for the Application of Force**

It is undisputed that both defendant Gonzales and defendant Reilly used their pepper spray after plaintiff had refused to comply with orders to exit his cell for approximately 30 to 40 minutes. Plaintiff was given ample time to comply with orders to leave his cell for a search to be performed and admits he was intentionally stalling and refusing to leave his cell. Although plaintiff attempted to negotiate with defendants by saying he would give them the cell phones if they allowed him even more time to do so, prisoners do not enjoy the right to give counter demands to an officers' lawful orders. See e.g., Soto v. Dickey, 744 F.2d 1260, 1267 (7th Cir. 1984) ("Orders given must be obeyed. Inmates cannot be permitted to decide which orders they will obey, and when they will obey them.").

Moreover, a controlled use of force involving up to three applications of OC pepper spray is a tactic used for removing an uncooperative inmate from a cell at CSP-Sac. Prison administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to present internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).

Plaintiff asserts defendants violated departmental policy to the extent that a First or Second Level Manager or AOD (on-site manager) in the form of a Captain, Administrative Officer of the Day, or Associate Warden was not present when the defendants employed their controlled use of force plan to deal with plaintiff. (ECF No. 37 at 67, 69, 105.) That alleged failure does not constitute a violation of a federal right. See Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (alleged failure to follow prison policy does not establish federal constitutional violation).

Plaintiff also argues the force was excessive because he was in a "defenseless" position on the toilet when he was pepper sprayed. (ECF No. 37 at 66.) However, plaintiff's refusal to comply with orders to exit his cell for 30 to 40 minutes presented a threat to the safety and security of the prison. "Correctional officials are not required to concede to the demands of inmates or wait them out in order to avoid the use of force." Manriquez v. Huchins, No. 1:09-CV-00456-LJO, 2012 WL 5866482, at *14 (E.D. Cal. Nov. 19, 2012), report and recommendation adopted, No. 1:09-CV-00456-LJO, 2013 WL 789081 (E.D. Cal. Mar. 1, 2013). The undisputed facts viewed in a light favorable to plaintiff indicate some use of force was required to gain plaintiff's compliance with defendants' lawful orders.

### 3. Amount of Force Used

Defendants Gonzales and Reilly made reasonable efforts to obtain plaintiff's compliance prior to using any force. It was only after plaintiff refused to comply with the orders of correctional officers that the pepper spray was administered. Utilizing the alternate option for defendants to enter plaintiff's cell to physically extract him would have required a physical confrontation and thus presented a risk of serious injury to plaintiff or the defendants. When compared to other available forms of force, the decision to use pepper spray to extract plaintiff

from his cell was a tempered use of force. See Jones v. Shields, 207 F.3d 491, 496 (8th Cir. 2000) (noting several circuits have approved the use of mace in small quantities to control a recalcitrant inmate and holding use of a stun gun was a tempered use of force).

In addition, there is no evidence of prolonged use of pepper spray. The undisputed facts viewed in a light favorable to plaintiff reflect three bursts of pepper spray, each dispensed while plaintiff was refusing to comply with lawful orders to exit his cell for a search to be performed. This limited application weighs in favor of a finding it was constitutionally permissible. See Soto, 744 F.2d at 1270 (the use of chemical agents does not constitute cruel and unusual punishment when reasonably necessary to subdue a "recalcitrant prisoner," even where the prisoner is locked in his cell or in handcuffs); compare Romero v. Ellery, No. 12-CV-01084-WHO, 2016 WL 4268658, at *5 (N.D. Cal. Aug. 15, 2016) (finding three blasts of pepper spray at non-complaint inmate, each lasting between five and ten seconds, constituted more than a de minimis amount of force). Here, there is no evidence the amount of force used by defendants was disproportionate to the need to use force to gain plaintiff's compliance.

The court separately considers the third burst of pepper. Correctional staff at CSP-Sac will deploy up to three applications of OC pepper spray to remove an uncooperative inmate from a cell. (SSUF 10.) Accepting plaintiff's evidence as true, defendant Reilly hurried to spray plaintiff as the cell door was closing while calling plaintiff an "EOP motherfucker." Defendants argue the final burst of pepper spray allegedly deployed served the same legitimate penological purpose as the first two sprays: to gain plaintiff's compliance. (ECF No. 40 at 3.)

Even if the court found plaintiff's evidence established a triable issue of fact regarding defendant Reilly's subjective intent for the third spray, plaintiff has not satisfied the objective component by showing conduct objectively harmful enough to offend contemporary standards of decency. See Hudson, 503 U.S. at 8. Plaintiff admits he had refused to exit his cell for 30 to 40 minutes after being ordered to do so and was intentionally stalling. Defendants could only restore order by obtaining plaintiff's compliance. The amount of force used in the form of three bursts of pepper spray does not weigh in favor of finding excessive force.

////

### 4.  Threat Reasonably Perceived

This factor does not weigh significantly on one side or the other. Construing the evidence in a light favorable to plaintiff, defendants had a valid basis to perceive plaintiff's failure to obey orders presented a threat to the order and security of the institution. It was not an imminent threat.

### 5.  Efforts to Temper Severity

Plaintiff was given advance warning that pepper spray was going to be deployed and had ample opportunity to comply with orders to exit his cell and avoid the use of force. This factor tends to indicate the force was applied in a good-faith effort to maintain or restore discipline, rather than maliciously and sadistically to cause harm.

### 6.  Conclusion: No Triable Issue of Fact

To survive summary judgment, plaintiff must put forward specific, nonconclusory factual allegations that establish a defendant acted with improper motives. See Jeffers v. Gomez, 267 F.3d 895, 907 (9th Cir. 2001) (per curiam). Plaintiff has failed to raise a triable issue of fact on his excessive force claims. Construing the record evidence in the light most favorable to plaintiff, and considering the relevant factors, defendants did not use excessive force in violation of the Eighth Amendment when they deployed three bursts of pepper spray at plaintiff in an attempt to gain his compliance with lawful orders to exit his cell so it could be searched for contraband. See Rodriguez v. Elmore, 407 F. App'x 124, 125-26 (9th Cir. 2010) ("Rodriguez failed to raise a triable issue as to whether prison officials "acted maliciously and sadistically for the very purpose of causing harm" by using pepper spray after Rodriguez and his cellmate repeatedly refused to comply with orders to exit their cell and be handcuffed so that prison officials could search their cell for a missing metal object."). Defendants' motion for summary judgment should be granted as to the excessive force claims against defendants Gonzales and Reilly.

## II.  Failure to Protect

A prison official may be liable under 42 U.S.C. § 1983 if he is aware that a fellow officer is violating a prisoner's constitutional rights but fails to intervene. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) ( "[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."); Gaudreault v.

13

Municipality of Salem, 923 F.2d, 203, 207 n. 3 (1st Cir. 1990) ("An officer who is present at the scene who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). Plaintiff's failure to protect claim against defendants Pitts, Valine, Jensen, and Villasenor is derivative of the excessive force claim on which there is no triable issue of fact. Because defendants Gonzales and Reilly did not use excessive force, summary judgment is also appropriate on the claim against defendants Pitts, Valine, Jensen, and Villasenor for failure to protect. See Bouie v. Smith, No. 2:18-CV-2040 KJM AC P, 2024 WL 3088474, at *18 (E.D. Cal. June 18, 2024), report and recommendation adopted, No. 2:18-CV-02040-DC-AC (PC), 2024 WL 4973506 (E.D. Cal. Dec. 4, 2024).

**PLAIN LANGUAGE SUMMARY FOR PRO SE PARTY**

The following information is meant to explain this order in plain English and is not intended as legal advice.

The court has reviewed the evidence and concluded there is no genuine issue of material fact for trial. The undersigned is recommending the defendants' motion for summary judgment be granted. You have 14 days to explain to the court why this is not the correct outcome. If you choose to do so, label your explanation "Objections to Magistrate Judge's Findings and Recommendations." The district court judge assigned to your case will review any timely objections filed and make a final decision on the motion for summary judgment.

**ORDER and RECOMMENDATION**

IT IS HEREBY ORDERED that the Clerk shall assign a district judge to this action.

In accordance with the above, IT IS RECOMMENDED as follows:

1. Defendants' motion for summary judgment (ECF No. 29) be GRANTED.
2. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be

filed and served within 7 days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  July 23, 2025

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

8, jame0188.msj